Christopher C. Hoffman, SBN 176334
choffman@laborlawyers.com
Megan C. Winter, SBN 241429
mwinter@laborlawyers.com
FISHER & PHILLIPS LLP
4747 Executive Drive
Suite 1000
San Diego, CA  92121-3095
Telephone:   (858) 597-9600
Facsimile:   (858) 597-9601

WARGO & FRENCH LLP
Michael D. Kabat, *Pro Hac Vice*
mkabat@wargofrench.com
Joseph W. Ozmer, *Pro Hac Vice*
jozmer@wargofrench.com
J. Scott Carr (SBN 136706)
scarr@wargofrench.com
1170 Peachtree St. NE – Suite 2020
Atlanta, GA 30309
Telephone:   (404) 853-1500
Facsimile:   (404) 853-1501

Attorneys for Defendant
TIME WARNER CABLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| SUSAN J. PEABODY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>TIME WARNER CABLE, INC.; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | CASE NO.: CV 09-6485-AG (RNBx)<br><br>**DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:** September 13, 2010<br>**Time:** 10:00 a.m.<br>**Place:** Courtroom 10D<br>**Class Action Fairness Act**<br>**Action Filed:**  July 31, 2009 |

In accordance with Local Rule 56-1, Defendant Time Warner Cable Inc. hereby submits its Statement of Uncontroverted Facts and Conclusions of Law in

Support of its Motion for Summary Judgment against Plaintiff Susan Peabody ("Plaintiff"):

### STATEMENT OF UNCONTROVERTED FACTS

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 1. As a cable television company, TWE is in business primarily for the purpose of selling and providing communications service. | 1. Declaration of Barry Feldstein ("Feldstein Decl."), ¶ 2. |
| 2. Plaintiff started working for TWE on July 25, 2008 as an Account Executive ("Account Executive") in its Media Sales Department. | 2. Declaration of Anthony Marquez ("Marquez Decl.") ¶ 9; Deposition of Plaintiff[1] ("Plf's Dep.") 28:12-14. |
| 3. Plaintiff was not employed for any specific term. | 3. Plf's Dep. 28:12-14. |
| 4. As an Account Executive, Plaintiff was responsible for selling advertising on TWE's cable network. | 4. Feldstein Decl. ¶ 4; Plf's Dep. 28:15-19. |
| 5. Plaintiff admitted that her principal function was selling advertising time. | 5. Plf's Dep. 28:15-19. |
| 6. When Plaintiff first became employed by TWE, her compensation was governed by the Time Warner Cable Media Sales 2008 Account Executive Individual Compensation Plan (the "2008 Plan"). | 6. Feldstein Decl. ¶ 5. |
| 7. Under the 2008 Plan, TWE budgeted a certain amount of advertising revenue it expected Plaintiff to generate from her sales efforts. | 7. Feldstein Decl. ¶ 5. |
| 8. TWE set an annual revenue goal of $370,000 from Plaintiff's sale of advertising. | 8. Plf's Dep. 12:1-10. |
| 9. Plaintiff's target compensation for 2008 was $75,000 per year, divided into a base salary of $20,000 per year and target commissions of $55,000 per year. | 9. Feldstein Decl. ¶ 5; Plf's Dep. 13:1-8. |

---

[1] The relevant excerpts from Plaintiff's deposition are attached as Exhibit A to the Declaration of J. Scott Carr filed concurrently herewith.

| **DEFENDANT'S UNCONTROVERTED FACTS** | **EVIDENCE IN SUPPORT** |
|---|---|
| 10. TWE paid commissions to Plaintiff based on a certain percentage of revenue generated by her sales. | 10. Feldstein Decl. ¶ 6. |
| 11. Under the 2008 Plan, the percentage used to determine the amount of the commission was based on how Plaintiff performed in relation to her budget, commonly referred to as an accelerator and decelerator. | 11. Feldstein Decl. ¶ 6; Plf's Dep. 11:17-25. |
| 12. This Plan provided that the higher the percentage of budgeted revenue achieved by an account executive, the higher the commission rate. For example, if an account executive achieved 100% of his/her budgeted revenue for a particular month, the commission rate was 14.86%. If the account executive reached only 50% of the monthly budgeted revenue, the commission rate was 11.15%. If the account executive reached 110% of the monthly budgeted revenue, the commission rate would have been 16.35% percent. | 12. Feldstein Decl. ¶ 6. |
| 13. Plaintiff's target commission percentage under the 2008 Plan was 14.86%. | 13. Plf's Dep. 13:9-15. |
| 14. Under the 2008 Plan, TWE had the express right to change the Plan. Indeed, the 2008 Plan provides that it "is subject to review or change at any time in accordance with company policy." | 14. Feldstein Decl. ¶ 5, Ex. A thereto at p. 2; Plf's Dep. 26:20 – 27:2. |
| 15. The 2008 Plan provides: "Nothing set forth herein or otherwise shall be construed as a guarantee of any compensation or a limitation of the Company's continued right to alter or reset such compensation or the method by which it is calculated." | 15. Feldstein Decl. ¶ 5, Ex. A thereto at pp. 1, 2: Plf's Dep. 14:25 – 15:11. |
| 16. The 2008 Plan specifically provides that it "does not constitute an express or implied contract of employment or other legally enforceable promise" between Plaintiff and TWE and "may not be relied upon as such." | 16. Feldstein Decl. ¶ 5, Ex. A thereto at pp.1, 2; Plf's Dep. 14:4-16. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 17. Plaintiff signed the 2008 Plan on the same page containing these provisions and testified that she understood each and every one of these provisions at the time of signing. | 17. Plf's Dep. 13:21-24; 14:4-16; 14:25 – 15:25. |
| 18. When asked if she specifically understood that TWE could change the 2008 Plan at any time, she answered, "of course." | 18. Plf's Dep. 26:20 – 27:2. |
| 19. During the latter half of 2008 and early 2009, TWE projected that revenue from advertising sales would decrease in 2009. | 19. Feldstein Decl. ¶ 7. |
| 20. TWE examined the possibility of changing the 2008 Plan to remove the accelerator/decelerator portion. | 20. Feldstein Decl. ¶ 7. |
| 21. TWE was concerned that more account executives would be subject to the decelerator based on the projected downturn in revenue in 2009. | 21. Feldstein Decl. ¶ 7. |
| 22. By eliminating the accelerator/decelerator and moving to a fixed commission rate, TWE hoped that it could lessen the impact of the anticipated downturn in revenue on account executive compensation in 2009. | 22. Feldstein Decl. ¶ 7. |
| 23. As it turns out, revenue from advertising sales decreased by approximately 30% in 2009 compared to 2008. | 23. Feldstein Decl. ¶ 7. |
| 24. Effective March 1, 2009, TWE implemented its Media Sales 2009 AE Compensation Plan (the "2009 Plan"). | 24. Feldstein Decl. ¶ 8, Ex. B thereto. |
| 25. The 2009 Plan lowered Plaintiff's target commission amount, increased her budgeted revenue generation, eliminated the accelerator/decelerator and replaced it with a flat commission percentage of 9.6% and added a new quarterly bonus component to Plaintiff's compensation. | 25. Feldstein Decl. ¶ 9, Ex. B thereto at p. 1. |
| 26. Plaintiff's $20,000 base compensation remained the same under the 2009 Plan. | 26. Feldstein Decl. ¶ 9; Plf's Dep. 53:23-25. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 27.  For the 2009 calendar year, TWE planned for Plaintiff to generate $535,000 from her advertising sales efforts. | 27.  Feldstein Decl. ¶ 9; Plf's Dep. 54:1-3. |
| 28.  TWE projected Plaintiff would make $51,100 in commissions by hitting her numbers in 2009. | 28.  Feldstein Decl. ¶ 9; Plf's Dep. 54:4-10. |
| 29.  Plaintiff could also have expected to earn bonus compensation of up to $7,900 for the year, paid on a quarterly basis. | 29.  Feldstein Decl. ¶ 9; Plf's Dep. 55:24 – 56:3. |
| 30.  Based on the 2009 plan, TWE projected that Plaintiff would make more money in 2009 than in 2008. | 30.  Feldstein Decl. ¶ 9; Plf's Dep. 53:17-22. |
| 31.  Plaintiff read, understood and signed the 2009 Plan on March 3, 2009. | 31.  Plf's Dep. 52:17-25; 56:15-25; 58:17-25. |
| 32.  Plaintiff understood that the 2009 Plan became effective March 1, 2009. | 32.  Plf's Dep. 62:20-22. |
| 33.  Plaintiff worked under the 2009 Plan for over two months before she resigned and was paid commissions under the 2009 Plan. | 33.  Plf's Dep. 56:15-25. |
| 34.  The method by which TWE paid commissions to Account Executives was the same under both the 2008 Plan and the 2009 Plan. An account executive earned a commission only upon the occurrence of three events: (1) procurement of the order; (2) broadcast of the advertising; and (3) collection of the revenue from the client. | 34.  Feldstein Decl. ¶ 10. |
| 35.  Under both the 2008 and 2009 Plans, the amount of the commission was based on a percentage of the revenue generated by the sales of advertising. | 35.  Feldstein Decl. ¶ 11. |
| 36.  TWE operates its advertising sales on a broadcast calendar, which is different than a regular calendar. | 36.  Feldstein Decl. ¶ 12.; Plf's Dep. 16:19 – 17:1 |
| 37.  Under the broadcast calendar, each month is either exactly four (4) weeks or exactly five (5) weeks, depending on the month. | 37.  Feldstein Decl. ¶ 12; Plf's Dep. 79:11-13. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 38.  The December 2008 broadcast month was exactly four (4) weeks and ran from December 1 through 28, 2008. | 38.  Feldstein Decl. ¶ 12, Ex. D thereto. |
| 39.  The January 2009 broadcast month was exactly four (4) weeks and ran from December 29, 2008 through January 25, 2009. | 39.  Feldstein Decl. ¶ 12, Ex. D thereto. |
| 40.  The November 2008 broadcast month, however, was exactly five (5) weeks and ran from October 27 through November 30, 2008. | 40.  Feldstein Decl. ¶ 12, Ex. D thereto. |
| 41.  Pursuant to the 2008 and 2009 plans, TWE paid commissions in the month following the month in which the commissionable advertising aired. | 41.  Feldstein Decl. ¶ 12. |
| 42.  Under both the 2008 and 2009 Plans, TWE paid commissions to account executives based on the broadcast (i.e., airing) of advertising during a broadcast month. | 42.  Feldstein Decl. ¶ 13; Plf"s Dep. 16:4 – 17:1; 57:1-9. |
| 43.  Both Plans provide and Plaintiff clearly understood that TWE did not pay commissions until advertising aired. | 43.  Feldstein Decl. ¶ 11; Plf"s Depo. at 24:5-8; 65:4-7; 104:9-12. |
| 44.  If an advertising spot aired on December 14, 2008, TWE would have paid the commission on that advertising to the responsible account executive in the following month, January 2009. | 44.  Feldstein Decl. ¶ 13, Ex. D thereto. |
| 45.  The commissions paid to an account executive in January 2009 would have been based on a percentage of revenue generated by advertising aired from December 1 through December 28, 2008, the broadcast calendar for December 2008. | 45.  Feldstein Decl. ¶ 13. |
| 46.  If advertising aired on December 29, 2008, the resulting commission would have been considered part of the January 2009 broadcast month and would have been paid in February 2009. | 46.  Feldstein Decl. ¶ 13. |
| 47.  If advertising Plaintiff sold did not air, Plaintiff was not paid a commission on that advertising. | 47.  Plf"s Dep. 24:5-8. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 48.  The commission for the July 2008 broadcast month in the amount of $5,074.40 was paid to Plaintiff in August 2008. | 48.  Marquez Decl. ¶ 12a. |
| 49.  The commission for the August 2008 broadcast month in the amount of $4,583.33 was paid to Plaintiff in September 2008. | 49.  Marquez Decl. ¶ 12b. |
| 50.  The commission for the September 2008 broadcast month in the amount of $4,583.33 was paid to Plaintiff in October 2008. | 50.  Marquez Decl. ¶ 12c. |
| 51.  The commission for the October 2008 broadcast month in the amount of $2,041.33 was paid to Plaintiff in November 2008. | 51.  Marquez Decl. ¶ 12d. |
| 52.  The commission for the November 2008 broadcast month in the amount of $5,415.17 was paid to Plaintiff in December 2008. | 52.  Marquez Decl. ¶ 12e. |
| 53.  The commission for the December 2008 broadcast month in the amount of $1,657.03 was paid to Plaintiff in January 2009. | 53.  Marquez Decl. ¶ 12f. |
| 54.  The commission for the January 2009 broadcast month in the amount of $2,253.87 was paid to Plaintiff in February 2009. | 54.  Marquez Decl. ¶ 12g. |
| 55.  The commission for the February 2009 broadcast month in the amount of $11,749.63 was paid to Plaintiff in March 2009. | 55.  Marquez Decl. ¶ 12h. |
| 56.  The commission for the March 2009 broadcast month in the amount of $9,383.24 was paid to Plaintiff on April 2009. | 56.  Marquez Decl. ¶ 12i. |
| 57.  The commission for the April 2009 broadcast month in the amount of $6,345.64 was paid to Plaintiff in May 2009. | 57.  Marquez Decl. ¶ 12j. |
| 58.  The commission for the May 2009 broadcast month in the amount of $3,847.46 was paid to Plaintiff in June 2009. | 58.  Marquez Decl. ¶ 12k. |
| 59.  For her brief time with TWE, TWE paid Plaintiff a total of $74,464.75, including $57,134.43 (or 77%) in commissions. | 59.  Marquez Decl., Ex. A. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 60. TWE paid Plaintiff her salary biweekly based on 40 hours each week at $9.61 per hour. | 60. Marquez Decl. ¶ 10. |
| 61. TWE paid Plaintiff salary of $769.23 every two weeks, or the equivalent of $384.62 per week. | 61. Marquez Decl. ¶ 10. |
| 62. Plaintiff resigned from TWE effective May 15, 2009. | 62. Marquez Decl. ¶ 13. |
| 63. Pursuant to the 2009 Plan, TWE paid Plaintiff over $10,000 in commissions after she resigned. | 63. Marquez Decl., Ex. A. |
| 64. Under the 2008 Plan, Plaintiff's commission on sales of advertising could have ranged anywhere from 11.15% to 18.68% of the revenue generated by her sales efforts. | 64. Feldstein Decl., Ex. A. |
| 65. Plaintiff testified that she worked 45 hours per week. | 65. Plf's Dep. 40:11 – 43:19. |
| 66. TWE advised Plaintiff of its right to change the 2008 Plan, and Plaintiff testified that she understood that right. | 66. Plf's Dep. 26:20 – 27:2; 27:18 – 28:7. |
| 67. Plaintiff claims she should have been paid under the 2008 Plan for certain advertising sold prior to March 2009 even though none of that advertising aired before March 2009, when the 2009 Plan became effective. | 67. Plf's Dep. at 72:6 – 73:25; 104:9-12. |
| 68. Plaintiff asserts she is owed waiting time penalties under California Labor Code Section 203 because TWE allegedly failed to pay her "earned commission wages" on the day she resigned for April and May 2009 commissions. | 68. Compl. ¶ 46. |
| 69. Neither the April nor May commission payments could have been calculated at the time of Plaintiff's resignation because they could have been subject to chargebacks from previous broadcast months pursuant to the compensation plans. | 69. Feldstein Decl. ¶ 15. |

| DEFENDANT'S UNCONTROVERTED FACTS | EVIDENCE IN SUPPORT |
|---|---|
| 70. Each Plan contains a provision that commission payments are subject to chargebacks if a customer for which an Account Executive has been paid a commission does not pay its invoice within 120 days. | 70. Feldstein Decl., Ex. A, p. 2 and Ex. B, p. 2. |
| 71. Plaintiff's February and March 2009 commissions were still subject to chargebacks at the time of her resignation in the middle of May 2009, and these chargebacks could have been applied to either the April or May 2009 commissions. | 71. Feldstein Decl. ¶ 16. |
| 72. TWE did not pay the April and May 2009 commissions at resignation because the exact amount of the commissions could not have been reasonably ascertained until the expiration of the period for TWE's clients to pay. | 72. Feldstein Decl. ¶ 16. |
| 73. Plaintiff admitted that she has no evidence that TWE "intentionally fail[ed] to pay wages to" her when they were due. | 73. Plf's Dep. 108:24 – 109:5; 110:7-16. |
| 74. Plaintiff claims that TWC violated section 226 because her wage statements failed to list the total hours she worked and the name and address of the legal entity that was her employer. | 74. Compl. ¶ 50. |
| 75. Plaintiff has no evidence and failed to identify any actual injury as a result of allegedly inaccurate wage statements. | 75. Plf's Dep. 108:17-23. |

## CONCLUSIONS OF LAW

| DEFENDANT'S CONCLUSIONS OF LAW | EVIDENCE IN SUPPORT |
|---|---|
| 1. Because TWE was exempt from paying Plaintiff overtime pursuant to the commissions paid exemption under Section 3(D) of Industrial Welfare Commission Order 4-2001, Defendant is entitled to summary judgment on Plaintiff's overtime claim. | 1. Statement of Uncontroverted Facts ("SUMF") ¶¶ 1-65. |

| DEFENDANT'S CONCLUSIONS OF LAW | EVIDENCE IN SUPPORT |
|---|---|
| 2. Because the undisputed facts show that TWE paid Plaintiff more than one and one-half times the minimum wage during her tenure with TWE, Defendant is entitled to summary judgment on Plaintiff's minimum wage claim. | 2. SUMF ¶¶ 1-65. |
| 3. Because the undisputed facts show that TWE was entitled to change Plaintiff's compensation at any time, Defendant is entitled to summary judgment on Plaintiff's claim for failure to pay earned commissions. | 3. SUMF ¶¶ 2, 3, 6, 14-25, 31-34, 41-43, 47, 66-67. |
| 4. Because the undisputed facts show that TWE timely paid Plaintiff commissions after her resignation, Defendant is entitled to summary judgment on Plaintiff's waiting time claim. | 4. SUMF ¶¶ 68-72. |
| 5. Because Plaintiff cannot show that TWE or Defendant acted willfully in allegedly failing to pay Plaintiff commissions in a timely manner upon her resignation, Defendant is entitled to summary judgment on Plaintiff's waiting time claim. | 5. SUMF ¶¶ 73. |
| 6. Because Plaintiff cannot show any harm or willfulness by Defendant in connection with her inaccurate wage statement claim, Defendant is entitled to summary judgment on that claim. | 6. SUMF ¶¶ 74-75. |

FISHER & PHILLIPS LLP

DATED: July 19, 2010

By: /s/ Megan C. Winter
    MEGAN C. WINTER

Attorneys for Defendant
Time Warner Cable Inc.

641143