**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUSAN J. PEABODY,<br>*Plaintiff-Appellant,*<br>v.<br>TIME WARNER CABLE, INC.,<br>*Defendant-Appellee.* | No. 10-56846<br>D.C. No.<br>2:09-cv-06485-AG-RNB<br>Central District of California,<br>Los Angeles<br>ORDER CERTIFYING A QUESTION TO THE SUPREME COURT OF CALIFORNIA |

Filed August 17, 2012

Before: Richard C. Tallman and N. Randy Smith, Circuit Judges, and Timothy M. Burgess, District Judge.*

---

## ORDER

This panel of the United States Court of Appeals for the Ninth Circuit, having heard the above-entitled case, hereby certifies to the Supreme Court of California that, in this case, there are questions concerning the law of California which are determinative of the case and on which there is no clear controlling precedent in the California judicial decisions. We

---

*The Honorable Timothy M. Burgess, District Judge for the U.S. District Court for Alaska, sitting by designation.

9437

therefore respectfully request that the Supreme Court of California answer the certified question presented below.

## I. Question Certified

In this case, Peabody appeals four issues:[1] 1) whether Peabody qualified for the commissions paid exemption of Section 3(D) of Wage Order 4-2001; 2) whether Peabody was owed additional minimum wage payments under Wage Order 4-2001 4(B); 3) whether Time Warner Cable, Inc. ("TWC") was exempt from providing wage statements under California Labor Code Section 226(a); and 4) whether TWC owes Peabody any late wage payments under California Labor Code Section 203. However, the underlying question of whether Peabody's commissions can be allocated over the course of a month, or whether the commissions must only be counted towards the pay period in which the commissions were paid, resolves all of these four issues.

Therefore, pursuant to Rule 8.548 of the California Rules of Court, we request that the Court answer the following question:

> To satisfy California's compensation requirements, whether an employer can average an employee's commission payments over certain pay periods when it is equitable and reasonable for the employer to do so.

In response to the question listed above, the Supreme Court of California shall not be bound by the manner in which the question has been phrased by this court. Cal. R. Ct. 8.548(f)(5). We agree to accept and follow the court's decision. Cal. R. Ct. 8.548(b)(2).

---

[1] The fifth issue Peabody raised regarding unpaid commissions was not related to the first four issues. Thus, the issue is not included in this order. It has been resolved by a Memorandum Disposition filed concurrently herewith.

## II. Statement of Facts

Susan Peabody was employed by TWC as an Account Executive in the Media Sales Department between July 15, 2008, and May 15, 2009. Peabody worked for TWC for only ten months and was not hired for any specific term. Peabody was a commissioned salesperson who was responsible for selling advertising on TWC's various cable channels. Peabody's commissions were based on the revenue generated by advertising aired every broadcast month, which lasted four or five weeks. Peabody also received a base salary of $20,000 per year. Peabody testified that she generally worked 45 hours per week. Peabody received biweekly payments from TWC. These pay stubs did not include the numbers of hours Peabody worked.

Peabody resigned from TWC effective May 15, 2009. During Peabody's ten months of employment, she was paid nearly $75,000 in total compensation.

Peabody brought a putative class action in California state court against TWC on behalf of current and former employees of TWC who held the position of "account executive." Peabody alleged violations of California's wage and overtime laws. The case was removed to federal court pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). TWC and Peabody stipulated to decide the dispositive motion for summary judgment prior to determination of class certification. The district court granted summary judgment in favor of TWC, and Peabody now appeals.

## III. Explanation of Certification

This request satisfies the requirements of Rule 8.548(a) of the California Rules of Court, because there is no controlling California precedent explaining how commissions should be allocated, and this question will determine the remaining issues Peabody raised in her appeal.

Generally, under California Labor Code Section 510, an employer is required to pay overtime to an employee who works more than 40 hours per week. Similarly, Section 4(B) of IWC Wage Order 4-2001 requires that "[e]very employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for *all hours worked* in the payroll period, whether the remuneration is measured by time, piece, *commission*, or otherwise." IWC Wage Order 4-2001, Cal. Code Regs. tit. 8, § 11040 4(B) (emphasis added). In addition, this Wage Order requires that employers pay employees overtime pay at the rate of one and one half times the regular pay for all hours worked over 40 hours in a workweek. *Id.* § 11040 3(A). California Labor Code Section 203(a) imposes penalties for any employer that "willfully fails to pay" wages of an employee who quits.

However, Section 3(D) of the IWC's Wage Order 4-2001 creates an exemption from the overtime requirements for employees paid through commission. This exemption provides that "[t]he [overtime] provisions of subsections (A), (B) and (C) above shall not apply to any employee whose earnings exceed one and one-half (1 1/2) times the minimum wage if more than half of that employee's compensation represents commissions." IWC Wage Order 4-2001, Cal. Code Regs. tit. 8, § 11040 3(D). California Labor Code Section 226(a)(2) also requires an employer to provide detailed wage statements unless an employee is exempt from overtime pay.

Peabody contends that her earnings did not exceed one and one-half times the minimum wage at all relevant times, and she also contends that her earnings did not exceed the required minimum wage at all times. During the time that Peabody was employed, the relevant minimum wage was $8.00 per hour. Therefore, Peabody's earnings needed to exceed $12.00 per hour for her to qualify for the commissions paid exemption, and Peabody testified that she generally worked about 45 hours per week.

The analysis hinges on how Peabody's commission can be calculated and allocated over pay periods. Peabody argues that, for all of California's compensation requirements, the minimum wage threshold must be earned within each workweek and paid within the corresponding pay period for which the exemption is claimed. Under this calculation, Peabody received only $769.23 in the majority of her biweekly pay periods,[2] because Peabody received her large monthly commission in only about half of the pay periods. Dividing the $769.23 amount by 45 hours for two weeks, Peabody's pay would reflect only $8.55 per hour for that pay period, which is insufficient to qualify for the commissions paid exemption. Peabody therefore argues that, while she qualified for the commissions paid exemption in the pay periods when she was paid her commission, TWC is unable to claim the exemption for the workweeks in which Section 3(D)'s minimum wage requirement was not met.

On the other hand, TWC argues that Peabody's earnings should be calculated based on the broadcast month (which ended every four or five weeks), so that Peabody's commissions count towards the pay period for which they were earned rather than the actual pay period in which the commissions were paid. Peabody received a large commission at the end of every broadcast month. Under, TWC's proposed calculation method, a pay period of four weeks multiplied by 45 hours per week and divided by $12.00 per hour would result in a requirement that Peabody earn over $2,160 to qualify for the commissions paid exemption. For a pay period of five

---

[2]This amount reflects Peabody's biweekly payment for her base salary of $20,000 per year. California law presumes that salary compensation is only intended to cover 40 hours in a regular workweek, unless the employer and employee explicitly agree otherwise. *See* Cal. Lab. Code § 515(d); *Arechiga v. Dolores Press, Inc.*, 192 Cal. App. 4th 567 (Ct. App. 2011). No such agreement was provided to Peabody here. Thus, if TWC is unable to average commission payments, Peabody may also be able to assert minimum wage violations for hours Peabody worked beyond the normal 40-hour workweek.

weeks, Peabody needed to earn over $2,700. TWC's compensation table demonstrates that Peabody easily qualified for the exemption under this calculation method. The lowest commission amount Peabody received for any broadcast month was $3,195.49, and the highest commission she received was $13,288.09. The only months where the broadcasting month was five weeks, rather than four weeks, were August and November of 2008, and March 2009. This commission was in addition to Peabody's annual base salary of $20,000.

There is no California case directly on point that explains how commission payments should be allocated over pay periods to determine whether an employee qualifies for California compensation requirements. The only authority on point appears to be the 2002 Updated Enforcement Policies and Interpretations Manual written by the Division of Labor Standards Enforcement ("DLSE Manual") or analogous federal law interpreting the Fair Labor Standards Act ("FLSA"). However, the Supreme Court of California has said that this DSLE Manual is "void and not entitled to any deference" because it was not passed in accordance with California's Administrative Procedure Act ("APA"). *Tidewater Marine W., Inc. v. Bradshaw*, 927 P.2d 296, 308 (Cal. 1996); *see also Morillion v. Royal Packing Co.*, 995 P.2d 139, 151 (Cal. 2000) (same). *But see Gomez v. Lincare, Inc.*, 93 Cal. Rptr. 3d 388, 396 n.6 (Ct. App. 2009) ("Although not controlling, the DLSE's interpretation of the motor carrier exemption in the Enforcement Manual is instructive."). It is also not clear whether courts may look to federal law under the FLSA to determine how commission payments should be allocated. *Compare Morillion*, 995 P.2d at 150 n.8, 151 (concluding that it was error for a court to rely on federal authority under the FLSA to construe a wage order if such an interpretation "provid[es] less protection to state employees"), *with In re United Parcel Serv. Wage & Hour Cases*, 118 Cal. Rptr. 3d 834, 843 (Ct. App. 2010) (determining that "[f]ederal law interpreting *similar components* of the FLSA exemptions is

properly considered as persuasive authority, even if *not binding* on this court" for a different wage order).

Because of the complexity of these state law issues and because of their significant policy implications that will effect many employers and employees throughout California, we believe that the Supreme Court of California, which has not yet interpreted the relevant provisions of the California Labor Code, "is better qualified to answer the certified question in the first instance." *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 294 F.3d 1085, 1092 (9th Cir. 2002).

## IV.  Administrative Information

The title and number of the case is as follows: *Peabody v. Time Warner Cable, Inc.*, Case No. 10-56846.

The names and addresses of counsel for the parties are as follows:

> Brian F. Van Vleck, Van Vleck Turner & Zaller LLP, 6310 San Vicente Blvd., Suite 430, Los Angeles, CA 90048, for Appellant
>
> J. Scott Carr, Wargo & French LLP, 999 Peachtree Street, NE, 26th Floor, Atlanta, Georgia 30309, for Appellee

*See* Cal. R. Ct. 8.548(b)(1). If the Supreme Court of California accepts this request, the Plaintiff-Appellant (Peabody) should be deemed the petitioner.

The Clerk of the Court is hereby directed to immediately transmit to the Supreme Court of California, under official seal of the Ninth Circuit, an original and ten copies of this order and request for certification, a certificate of service on the parties, and all relevant briefs and excerpts of record pursuant to California Rules of Court 8.548(c)-(d). The Clerk

shall provide additional record materials if so requested by the Supreme Court of California. Cal. R. Ct. 8.548(c).

The case is withdrawn from submission, and further proceedings in this court are stayed pending final action by the Supreme Court of California. The parties shall notify the Clerk of this Court within seven days after the Court accepts or rejects certification, and again within seven days if the Court renders an opinion. The panel retains jurisdiction over further proceedings.

**IT IS SO ORDERED.**